# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JAIRUS D. NYTES,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-788 (RBW) |
| | ) | |
| TRUSTIFY, INC. and TRINET HR | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

The plaintiff initiated this civil action in the Superior Court of the District of Columbia

("Superior Court") against the defendants, Trustify, Inc. ("Trustify") and TriNet HR Corporation

("TriNet"), asserting claims of disability discrimination and retaliation under the District of

Columbia Human Rights Act ("DCHRA"), D.C. Code §§ 2-1402.11(a)(1), 2-1402.61(a) (2012).

See generally Civil Complaint for Equitable and Monetary Relief and Demand for Jury Trial

("Compl."); see also Amended Complaint.  On April 27, 2017, defendant TriNet removed the

case to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) (2012),

see Notice of Removal ¶ 13, which the plaintiff did not oppose.  On December 4, 2017, the Court

ordered the parties to provide further briefing on the allegations and arguments set forth in

defendant TriNet's Notice of Removal to address the Court's concerns regarding whether it has

subject-matter jurisdiction over this case.  See Order at 6 (Dec. 4, 2017), ECF No. 15 (the

"December 4, 2017 Order").  Currently before the Court are the parties' filings in response to its

---

[1] The caption for this case created by the Clerk of the Court identifies the plaintiff as Jarius Nytes; however, the plaintiff's filings and various identification documents attached as exhibits to those filings reflect that the correct spelling of the plaintiff's first name is Jairus.  See, e.g., Second Amended Complaint at 1; see also Response to Court, Exhibit B (copy of the plaintiff's California driver's license) at 3.

December 4, 2017 Order, <u>see generally</u> Response to Order ("Pl.'s Resp."); <u>see also</u> Defendants' Reply in Support of TriNet HR Corporation's Notice of Removal ("Defs.' Reply"), as well as Defendant TriNet HR Corporation's Motion to Dismiss Plaintiff's Second Amended Complaint ("TriNet's Mot."). Upon consideration of the parties' submissions,[2] the Court concludes that it must <u>sua sponte</u> remand this case to the Superior Court because it lacks subject-matter jurisdiction.

## I. BACKGROUND

From June 1, 2015, until his termination on December 8, 2015, the plaintiff worked as an Account Manager for defendant Trustify, <u>see</u> Second Amended Complaint ("2d Am. Compl.") ¶¶ 8, 10, 13, which is a for-profit corporation "engaged in the business of providing and arranging for private investigative services," Trustify's Answer ¶¶ 2, 10. "[D]uring the period of [the p]laintiff's employment," Trustify "entered into a contractual relationship with [d]efendant TriNet, which is a [professional employer organization, to provide] administrative services to [Trustify's] employees[,] including [the p]laintiff." <u>Id.</u> ¶ 11. Pursuant to this contractual relationship, defendant TriNet "provided [the plaintiff] with an employee handbook" (the "TriNet Employee Handbook"), 2d Am. Compl. ¶ 14, which described the relationship between defendant TriNet and partner companies like defendant Trustify as follows:

> Customer companies [who partner with TriNet] and [their] employees are affiliated with TriNet through a co-employer relationship. In partnering with TriNet, customer companies elect to share several important employer responsibilities with TriNet[,] . . . [including that] TriNet has responsibility for paying wages,

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) Defendant TriNet HR Corporation's Memorandum in Support of Its Motion to Dismiss the Second Amended Complaint ("TriNet's Mem."); (2) the Plaintiff's Opposition to Defendant TriNet HR Corporation's Motion to Dismiss the Second Amended Complaint ("Pl.'s Opp'n"); (3) Defendant TriNet HR Corporation's Reply in Support of Its Motion to Dismiss the Second Amended Complaint ("TriNet's Reply"); and (4) Defendant Trustify, Inc.'s Answer to Plaintiff's Second Amended Complaint ("Trustify's Answer").

sponsoring and administering benefits, processing and maintaining certain employee records, and performing other related HR functions.

2d Am. Compl., Exhibit ("Ex.") 1 (TriNet Employee Handbook) at 6–7.

## A.    The Plaintiff's Claims

The plaintiff, who "suffers from . . . Bipolar Disorder II," 2d Am. Compl. ¶ 21, alleges that during his employment with Trustify, he "disclosed his disability to his managers at Trustify," id. ¶ 23, and "on more than one occasion, requested reasonable accommodation for his disability," id. ¶ 24, specifically requests for a particular "work schedule," id. ¶ 37.[3]  In making these requests, the plaintiff alleges that he "follow[ed] the policy set by [defendant] TriNet," id. ¶ 24, which states that

> [a]ny applicant or employee who requires an accommodation during the application process or in order to perform the essential functions of the job should contact a company manager, a company officer or a TriNet HR Representative to request such an accommodation.  If you have any reason to believe that you (or someone else) haven't been treated in accordance with this policy, you should immediately inform your manager, any other company manager or officer, TriNet HR Representative or the TriNet Solution Center. All managers should immediately report any such matters to a TriNet HR Representative.

Id., Ex. 1 (TriNet Employee Handbook) at 19.  The plaintiff further alleges that in response to his requests, defendant "Trustify refused to engage in the required interactive process with [him] and refused [him] an accommodation for his disability," id. ¶ 26, and defendant TriNet also "did not engage in the required interactive process with [him]," id. ¶ 27.  Thereafter, "in late November 2015 [and] into early December 2015," the plaintiff "experienced a period of decompensation . . . because of his disability, and . . . requested further accommodation."  Id.

---

[3] The plaintiff alleges that he made requests for accommodation "on more than one occasion," Am. Compl. ¶ 24, and suggests that he requested not only a particular work schedule, but also other accommodations, see id. ¶ 37 (alleging that defendant Trustify "refused to provide the work schedule and the reasonable accommodation that [the plaintiff] needed"); however, he fails to identify the additional accommodations he requested.

¶ 28.  Then, "[defendant] Trustify decided to terminate [the plaintiff]," id.; see also id. ¶ 8, which

defendant TriNet "approved," id. ¶ 29.  Finally, the plaintiff alleges that "Trustify [and defendant

TriNet] . . . opposed [the plaintiff] obtaining unemployment benefits."  Id. ¶ 38; see also id. ¶ 40.

## B.    The Plaintiff's Citizenship

The undisputed facts relevant to the Court's determination of the plaintiff's citizenship

for diversity purposes are the following.  "From June 1992 through August 2011," the plaintiff

"reside[d] [ ] in California," during which time he "maintained a California driver's license, paid

state taxes in California, and voted in [California] state elections in 2011."  Pl.'s Resp., Ex. A

(Affidavit of Jairus Nytes ("Nytes Aff.")) ¶ 1.  In August 2010, the plaintiff enrolled as a student

at Georgetown University ("Georgetown") here in the District of Columbia, see id., Ex. A (Nytes

Aff.) ¶ 2, and "[b]etween August 2010 and May 2016, [he] lived in various locations in [the

District of Columbia] and Virginia," id., Ex. A (Nytes Aff.) ¶ 3.  In May 2015, the plaintiff "took

a medical leave of absence from Georgetown."  Id., Ex. A (Nytes Aff.) ¶ 5.  Shortly thereafter,

the plaintiff "began [his] employment with Trustify . . . in the District of Columbia," id., Ex. A

(Nytes Aff.) ¶ 6, which ended upon his termination on December 8, 2015, see id., Ex. A (Nytes

Aff.) ¶ 7.  "In late May 2016, [the plaintiff] returned to California," id., Ex. A (Nytes Aff.) ¶ 8,

where he resided "through May 2017," id., Ex. A (Nytes Aff.) ¶ 10.  During that time, the

plaintiff "took a position as a retail sales associate at a Best Buy in Victorville, California," id.,

Ex. A (Nytes Aff.) ¶ 12; "obtained a California driver's license," id., Ex. A (Nytes Aff.) ¶ 11;

and "registered to vote as a California resident," id., Ex. A (Nytes Aff.) ¶ 13.

On December 7, 2016, the plaintiff filed his initial Complaint in this case in Superior

Court, see Compl. at 1, and on April 27, 2017, defendant TriNet removed the case to this Court,

<u>see</u> Notice of Removal ¶ 13.  On May 9, 2017, the plaintiff filed his Second Amended

Complaint, <u>see generally</u> 2d Am. Compl., and defendant TriNet filed its motion to dismiss that

complaint shortly thereafter, <u>see</u> TriNet's Mot.

## II.    ANALYSIS

As the Court explained in its December 4, 2017 Order,

> [a] defendant may remove a civil case from a state court to the federal
> district court embracing the place where such action is pending when the district
> court has original jurisdiction.  <u>See</u> 28 U.S.C. § 1441(a).  However, "[b]ecause
> federal courts are courts of limited jurisdiction, the removal statute is to be strictly
> construed," <u>Kopff v. World Research Grp., LLC</u>, 298 F. Supp. 2d 50, 54 (D.D.C.
> 2003) (first citing <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100, 100–07
> (1941); then citing <u>Diaz v. Sheppard</u>, 85 F.3d 1502, 1505 (11th Cir. 1996); and then
> citing <u>Williams v. Howard Univ.</u>, 984 F. Supp. 27, 29 (D.D.C. 1997)), and "[a]
> defendant seeking to remove an action from state court bears the burden of
> establishing federal jurisdiction," <u>Kormendi/Gardner Partners v. Surplus
> Acquisition Venture, LLC</u>, 606 F. Supp. 2d 114, 120 (D.D.C. 2009) (citing <u>McNutt
> v. Gen. Motors Acceptance Corp. of Ind.</u>, 298 U.S. 178, 189 (1936)).  As the
> District of Columbia Circuit has explained, "[w]hen it appears that a district court
> lacks subject matter jurisdiction over a case that has been removed from a state
> court, the district court <u>must</u> remand the case."  <u>Republic of Venezuela v. Philip
> Morris Inc.</u>, 287 F.3d 192, 196 (D.C. Cir. 2002) (emphasis added) (citing 28 U.S.C.
> § 1447(c)); <u>see also</u> <u>Int'l Union of Bricklayers & Allied Craftworkers v. Ins. Co. of
> the West</u>, 366 F. Supp. 2d 33, 36 (D.D.C. 2005) (Walton, J.) ("[T]he court must
> resolve any ambiguities concerning the propriety of removal in favor of remand."
> (quoting <u>Johnson–Brown v. 2200 M St., LLC</u>, 257 F. Supp. 2d 175, 177 (D.D.C.
> 2003))).  "Because a . . . district court, acting <u>sua sponte</u>, may raise the court's lack
> of subject matter jurisdiction, a court may also issue a remand order on its own
> initiative."  <u>Simon v. Mitchell</u>, 199 F. Supp. 3d 244, 246 (D.D.C. 2016) (citing
> <u>Ellenburg v. Motors Chassis, Inc.</u>, 519 F.3d 192, 196–97 (4th Cir. 2008)).

> Defendant TriNet asserts that the Court has diversity jurisdiction over this
> case pursuant to 28 U.S.C. § 1332(a), Notice of Removal ¶ 13 . . . .  Section 1332
> provides that a federal district court has original jurisdiction in a civil case when
> the amount in controversy exceeds $75,000, exclusive of interest and costs, and the
> case involves a dispute between "citizens of different States."  § 1332(a).  In order
> for diversity jurisdiction to exist, "there must be 'complete diversity' between the
> parties, meaning that . . . 'each defendant is a citizen of a different State from <u>each</u>
> plaintiff.'"  <u>Lifeline, Inc. v. Bakari</u>, 107 F. Supp. 3d 38, 40 (D.D.C. 2015) (quoting
> <u>Owen Equip. & Erection Co. v. Kroger</u>, 437 U.S. 365, 373 (1978)). . . .

> "[R]emovability is determined from the record before the court at the time the notice of removal . . . is filed in federal court," and, "in addition, [a] large minority of courts require complete diversity not only when removal is sought, but also when the original action is filed in the state court." Smith v. Hendricks, 140 F. Supp. 3d 66, 71 (D.D.C. 2015) (second and fourth alterations in original) (quoting Henok v. JPMorgan Chase Bank, N.A., 106 F. Supp. 3d 1, 5 (D.D.C. 2015)).

December 4, 2017 Order at 2–3.

The plaintiff does not dispute that the amount in controversy requirement is satisfied in this case, see Pl.'s Resp. at 3, and the Court concludes that this requirement is satisfied based on the plaintiff's request for relief in his initial and first amended complaints, which sought damages in an amount "to be determined at trial, but in no event in excess of $74,999," plus "[r]easonable attorney's fees," see Notice of Removal ¶¶ 12–13 (quoting Am. Compl. at 7); see also Compl. at 7. As the Court explained in its December 4, 2017 Order, "attorney's fees 'may be counted toward establishing a jurisdictional amount when they are provided by . . . a statute in controversy,'" December 4, 2017 Order at 5 (quoting Parker–Williams v. Charles Tini & Assocs., 53 F. Supp. 3d 149, 153 (D.D.C. 2014)), "and the DCHRA provides for an award of attorney's fees to a prevailing plaintiff," id. (citing D.C. Code § 2-1403.13(a)(1)(E)).[4] However, the plaintiff does dispute that complete diversity of citizenship exists between the parties. For the reasons explained below, the Court agrees with the plaintiff.

---

[4] The Court also noted that "the plaintiff's second amended complaint does not include a request for any specific monetary damages award," December 4, 2017 Order at 6 (citing 2d Am. Compl. at 8–9), but explained that "this omission has no bearing on the Court's assessment of the amount in controversy because 'removability is determined from the record before the court at the time the notice of removal . . . is filed in federal court,'" id. (quoting Smith, 140 F. Supp. 3d at 71), and "'[o]nce a case is properly removed, a plaintiff may not amend the complaint solely to defeat federal jurisdiction,'" id. (alteration in original) (quoting Zuurbier v. MedStar Health, Inc., 306 F. Supp. 2d 1, 5 (D.D.C. 2004) (collecting cases)).

## A.       Complete Diversity of Citizenship Analysis

Defendant TriNet contends that the parties are completely diverse because it is a citizen of California, Notice of Removal ¶ 8; defendant Trustify is a citizen of Delaware and the Commonwealth of Virginia, id. ¶ 9; and the plaintiff is a citizen of the District of Columbia, see id. ¶¶ 4–7.  The plaintiff concedes that defendant TriNet is a citizen of California, see Pl.'s Resp. at 2, and based on defendant TriNet's representations that it is incorporated and has its principal place of business in California, see Notice of Removal ¶ 8; see also id., Ex. 5 (Certificate of Status from the Secretary of State for the State of California identifying TriNet HR III, Inc. as a California corporation),[5] the Court finds that defendant TriNet is a citizen of California for diversity purposes, see 28 U.S.C. § 1332(c)(1) (providing that a corporation is "deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business").  However, the plaintiff disputes defendant TriNet's position as to his citizenship and asserts that he "was a citizen of California when he filed [h]is [ ] Complaint and when [d]efendant TriNet filed its Notice of Removal."  Pl.'s Resp. at 1.  Therefore, the plaintiff argues that diversity jurisdiction cannot exist because both he and defendant TriNet are citizens of the same state.  See Pl.'s Resp. at 1–2.[6]

"An individual has citizenship in a state for diversity purposes if he is an American citizen and is domiciled in the state."  CostCommand, LLC v. WH Adm'rs, Inc., 820 F.3d 19, 21

---

[5] Although Exhibit 5 to defendant TriNet's Notice of Removal is a certificate issued in the name of TriNet HR III, Inc., see Notice of Removal, Ex. 5, defendant TriNet represents that "[t]his is the correct name for [d]efendant TriNet, which was formerly known as TriNet HR Corporation," id. at 3 n.1.

[6] The plaintiff also asserts that defendant Trustify is a citizen of the District of Columbia, not the Commonwealth of Virginia, and "[t]herefore, should the Court determine that [the plaintiff] was [a] citizen of the District, [defendant] Trustify's citizenship of the District at the time the original complaint was filed shows the lack of complete [ ]

(continued . . . )

7

(D.C. Cir. 2016) (citing <u>Newman–Green, Inc. v. Alfonzo–Larrain</u>, 490 U.S. 826, 828 (1989)).

"Domicile is determined by two factors: physical presence in a state, and intent to remain there for an unspecified or indefinite period of time." <u>Prakash v. American Univ.</u>, 727 F.2d 1174, 1180 (D.C. Cir. 1984). "Any analysis of a party's domicile 'must be fact-specific,'" <u>Lopes v. Jetsetdc, LLC</u>, 4 F. Supp. 3d 238, 241 (D.D.C. 2014) (quoting <u>Wagshal v. Rigler</u>, 947 F. Supp. 10, 13 (D.D.C. 1996)), and "[i]ndicia of domiciliary status may include a person's current residence, a sworn declaration of domicile, ownership of real and personal property, voting registration, bank accounts, automobile registration, driver's license[,] [ ] club membership," <u>Core VCT Plc v. Hensley</u>, 59 F. Supp. 3d 123, 126 (D.D.C. 2014) (citing <u>United States v. Williams</u>, 825 F. Supp. 2d 117, 124 (D.D.C. 2011)), "location of spouse and family, . . . place of employment or business, and payment of taxes," <u>Mayer Brown LLP v. Dulcich, Inc.</u>, No. 12-cv-1318, 2013 U.S. Dist. LEXIS 28748, at *4 (D.D.C. Mar. 4, 2013) (quoting <u>Lew v. Moss</u>, 797 F.2d 747, 750 (9th Cir. 1986)).

Defendant TriNet argues that the plaintiff "was and remains a domiciliary of the District of Columbia" because "[h]e filed a lawsuit in the District of Columbia arising out of his former employment []here," Notice of Removal ¶ 7; his "LinkedIn page states that he is located in Washington, DC," <u>id.</u> ¶ 6; "[h]e has shown an ongoing presence in the District of Columbia based upon serving as President and Founder of [a business], which is located in the District of Columbia," <u>id.</u> ¶ 7; "[h]e states in his [first amended complaint] that he was and remains a

--------

( . . . continued)

diversity [of citizenship] among the [p]arties." Pl.'s Resp. at 3. Because the Court concludes that defendant TriNet has not satisfied its burden to show that the plaintiff is a citizen of the District of Columbia for diversity purposes and complete diversity of citizenship does not exist on that basis, the Court need not address the plaintiff's alternative argument that complete diversity does not exist because defendant Trustify is a citizen of the District.

student at Georgetown University, which is located in the District of Columbia," id.; and "[t]he driver's license he supplied to [defendant] Trustify for his employment with that company . . . was issued by the District of Columbia and by its terms of issue [is] valid until 2021," id. (internal quotation marks omitted). The plaintiff argues in response that he "was a citizen of California when he filed [h]is pro se Complaint and when [d]efendant TriNet filed its Notice of Removal" because "[p]rior to attending Georgetown [ ], [he] was an eighteen-year resident of California"; "[he] returned to California while taking a medical leave of absence from his studies," where he "got a job, obtained a driver's license, registered to vote, and filed taxes as a California resident"; and "[w]hen TriNet filed its Notice of Removal, [he] had no idea if and when he would be returning to Georgetown [ ] or the District of Columbia," and he in fact did not return to Georgetown until "[o]ver a year later." Pl.'s Resp. at 1. He further argues that his "conduct bolsters the presumption that students are domiciled in their home state and not where they attend university." Id. at 2.

The Court will first address the significance of the plaintiff's allegation that he "was an eighteen-year resident of California" prior to attending Georgetown. Id. at 1. Specifically, the plaintiff represents that "[f]rom June 1992 through August 2011," the latter date being one year after he enrolled at Georgetown, "[his] legal residence was in California, as [he] maintained a California driver's license, paid state taxes in California, and voted in state elections in 2011." Id., Ex. A (Nytes Aff.) ¶¶ 1–2. Defendant TriNet does not dispute these facts, see generally Defs.' Reply, and the Court finds that these undisputed facts are "indicia of domiciliary status" sufficient to establish that prior to attending Georgetown, the plaintiff was domiciled in California, see Core VCT, 59 F. Supp. 3d at 126.

Having reached the conclusion that the plaintiff was domiciled in California at least up to the point that he began attending Georgetown, the question for the Court becomes whether defendant TriNet has shown that the plaintiff established a domicile in the District at some point prior to filing his suit or prior to the time of removal. "[C]ourts apply a presumption of continuing domicile, so that domicile in one place remains until domicile in a new place is established." Id.; see also Desmare v. United States, 93 U.S. 605, 610 (1876) ("A domicile once existing continues until another is acquired."). "Once a party has established a domicile, the burden of demonstrating that a new domicile has been established lies with the person seeking to establish the change." 6 James Wm. Moore, et al., Moore's Federal Practice § 102.35[6] (3d ed. 1999).

Analyzing the first element of domicile—"physical presence in a state," Prakash, 727 F.2d at 1180—it is undisputed that between August 2010 and May 2016, the plaintiff resided in the District for some period of time while he was attending Georgetown, see Pl.'s Resp., Ex. A (Nytes Aff.) ¶ 3. However, it is also undisputed that the plaintiff lived outside of the District for at least some part of that time, see id., Ex. A (Nytes Aff.) ¶ 3 ("Between August 2010 and May 2016, I lived in various locations in Washington, DC and Virginia." (emphasis added)), and that at the time the initial Complaint was filed and at the time of removal, the plaintiff resided in California, see id., Ex. A (Nytes Aff.) ¶¶ 15, 19, having returned there in May 2016, see id., Ex. A (Nytes Aff.) ¶ 8. Nevertheless, the plaintiff's residency in the District offers some support for defendant TriNet's position. See Naegele v. Albers, 355 F. Supp. 2d 129, 134 (D.D.C. 2005) ("residency is indicative of domicile"). However, as defendant TriNet acknowledges, see Notice of Removal ¶ 5, "residence alone is insufficient to establish the citizenship necessary for

diversity jurisdiction," see Novak v. Capital Mgmt. & Dev. Corp., 452 F.3d 902, 906 (D.C. Cir.

2006) (quoting Naartex Consulting Corp. v. Watt, 722 F.2d 779, 792 n.20 (D.C. Cir. 1983)).[7]

The Court next considers the second element of domicile—"intent to remain [in a state]

for an unspecified or indefinite period of time." Prakash, 727 F.2d at 1180. In assessing the

intent of college students,

> [i]t is generally presumed that a student who attends a university in a state other
> than the student's home state intends to return home on completion of studies.
> However, the presumption is rebuttable, and a college student may establish the
> requisite intent to establish a new domicile in the place where he or she is enrolled
> in school. A student must evidence a post-graduate commitment to remain in the
> school state to rebut the presumption. It has been held that a student who has not
> yet decided where he or she will reside after finishing studies, as opposed to
> forming a definite intent to remain in the school state, has not rebutted the
> presumption of retention of the former domicile.

Moore et al., supra, § 102.37[6]; see also Hakkila v. Consolidated Edison Co. of N.Y., Inc., 745

F. Supp. 988, 990 (S.D.N.Y. 1990) ("Courts have consistently recognized that out-of-state

college students are temporary residents and not domiciliaries of the states in which they attend

college[.]"); Bradley v. Zissimos, 721 F. Supp. 738, 739 n.3 (E.D. Pa. 1989) ("It is generally

presumed that a student who attends a university in a state other than the student's 'home' state

intends to return 'home' upon completion of studies."). Applying these principles here, the

Court must presume that the plaintiff "intend[ed] to return [to California] on completion of his

studies," and to rebut this presumption, defendant TriNet must produce evidence sufficient to

---

[7] Defendant TriNet argues that "during and after the relevant period, [the plaintiff] maintained an ongoing presence in the District . . . by maintaining a business [here]," Defs.' Reply at 1–2; however, defendant TriNet fails to cite any case law, and the Court is unable to locate any, suggesting that maintaining a business in a state alone is tantamount to being physically present in the District for diversity purposes. And indeed, the plaintiff represents that his responsibilities as to his business did not require him to be present in the District. See Pl.'s Resp., Ex. A (Nytes Aff.) ¶ 16 (declaring that "[w]hen [he] resided in California, [he] performed [his] duties as president of [his] company] from California").

demonstrate that the plaintiff had "a post-graduate commitment to remain in the [District]." See Moore et al., supra, § 102.37[6].

The Court concludes that defendant TriNet has failed to rebut the presumption that the plaintiff intends to return to California after completing his studies. Defendant TriNet primarily emphasizes that the plaintiff has "maintained . . . a business in the District" and that "during the entire[t]y of his absence from the District [in 2016 to 2017], [the p]laintiff continued to . . . perform his duties as president of that company," Defs.' Reply at 1–2. However, the plaintiff's association with his District-based company does not compel the conclusion that the plaintiff intends to remain in the District after completion of his studies, and the fact that the plaintiff was able to perform his duties as president remotely from California belies defendant TriNet's position that running a District-based company necessarily means that the plaintiff intends to remain in the District. Defendant TriNet also points to the plaintiff's District of Columbia driver's license issued in 2014 and valid until 2021, as support for its position. See Notice of Removal ¶ 7; see also id., Ex. 2 (copy of the plaintiff's California driver's license). Although a driver's license is one of the "indicia of domiciliary status," Core VCT, 59 F. Supp. 3d at 126, and therefore offers some support for defendant TriNet's position, its significance is undercut by the fact that the plaintiff more recently obtained a California driver's license in 2016, see Pl.'s Resp., Ex. A (Nytes Aff.) ¶ 11. And although not explicitly relied on by defendant TriNet, the plaintiff worked at Trustify in the District, which is another "indicia of domiciliary status," Core VCT, 59 F. Supp. 3d at 126; however, defendant TriNet has given the Court no reason to believe that his brief employment with Trustify is persuasive evidence of an intent to have "a permanent career . . . in [the District]" rather than a mere "desire to earn money to help fund the expenses of

h[is] education," <u>Hakkila</u>, 745 F. Supp. at 991; <u>see also</u> <u>id.</u> at 990–91 (finding that an out-of-state student's "work-study job . . . and her various part-time employments[ ]working as a waitress and in a retail store[ ][we]re not steps toward a permanent career in radio in [her school's state]").

The remaining evidence cited by defendant TriNet and otherwise in the record is even less persuasive. While defendant TriNet relies on the fact that the plaintiff "filed a lawsuit in the District of Columbia arising out of his former employment []here," Notice of Removal ¶ 7, it cites no legal authority, nor is the Court aware of any, for the proposition that filing a lawsuit in a state is evidence of one's intent to remain there. Furthermore, the plaintiff's statement that "[w]hen [he] left for California [in May 2016], [he] intended to return to Georgetown," Pl.'s Resp., Ex. 1 (Nytes Aff.) ¶ 9, and the fact that since the filing and removal of this case, the plaintiff has indeed returned to the District to continue his studies, <u>see</u> Defs.' Reply at 2, simply say nothing about whether the plaintiff intends to remain in the District <u>after</u> completing his studies. And finally, the fact that the plaintiff's LinkedIn page has indicated that the plaintiff was "located" in the District, Notice of Removal ¶ 6, is likewise not probative of the plaintiff's intent to remain in the District after graduation.

Furthermore, the import of all of this evidence is undermined because "as of the time [the plaintiff] commenced this suit, he had not affirmatively severed his ties to [California]." <u>Murphy v. Newport Waterfront Landing, Inc.</u>, 806 F. Supp. 322, 324 (D.R.I. 1992) (emphasis added) (fact that student attending law school in Nebraska had stated that "he wanted to work either in Massachusetts or Nebraska" was not sufficient to establish domicile in Nebraska in light of other ties to his home state of Massachusetts); <u>see also</u> <u>Blackwell v. Elsten</u>, No. 84-cv-1679, 1984 WL

2753, at *3 (D.D.C. Dec. 11, 1984) ("Even as conclusive a sign of domicile as registering to vote in the new state will not necessarily defeat a student's citizenship in his home state if there are other significant indicia of citizenship in the prior state.").  The undisputed facts demonstrate that the plaintiff has maintained significant ties with California, including that in 2011, a year after he enrolled at Georgetown, see Pl.'s Resp., Ex. A (Nytes Aff.) ¶ 2, the plaintiff "maintained a California driver's license[] . . . and voted in [California] state elections," see id., Ex. A (Nytes Aff.) ¶ 1.  It is also undisputed that following the plaintiff's termination from Trustify, he returned to California for a year, see id., Ex. A (Nytes Aff.) ¶¶ 8, 10, during which time he "obtained a California driver's license," see id., Ex. A (Nytes Aff.) ¶ 11; "took a position as a retail sales associate at a [local] Best Buy," id., Ex. A (Nytes Aff.) ¶ 12; "registered to vote as a California resident," id., Ex. A (Nytes Aff.) ¶ 13; and "filed taxes as a California resident," id., Ex. A (Nytes Aff.) ¶ 14.  His return to California itself undercuts defendant TriNet's proposition that the Court should find that the evidence supports its claim that the plaintiff intended to remain in the District upon completion of his studies, see Hakkila, 745 F. Supp. at 990 (finding that out-of-state college student had not established a domicile in the state where her school was located, in part because she returned to Alaska, the state of her birth, in the summers), and his return is particularly persuasive when coupled with the various actions he took to reestablish his California ties while living there, see Bradley, 721 F. Supp. at 739–40 (finding that the plaintiff was domiciled in his home state and not where he leased an apartment or received mail in part because "[h]e ha[d] maintained significant ties with [his home state] as a taxpayer [and] as a licensed driver").

Defendant TriNet's evidence is also undermined by what it has failed to show. Notably, it has not provided evidence that the plaintiff registered to vote in the District, voted in the District, registered a vehicle in the District, or paid taxes in the District, all recognized as "indicia of domiciliary status," see Core VCT, 59 F. Supp. 3d at 126, and some which are recognized as particularly probative of domiciliary intent, see Blackwell, 1984 WL 2753, at *3 n.1 (finding "the fact that the plaintiff maintained his voting registration in the District of Columbia and voted in the District immediately before filing [his] lawsuit and several months thereafter [to be] of particular significance"). Courts have found the absence of such indicia to be significant in concluding that a party had failed to rebut the presumption that an out-of-state college student intends to return to his home state. See Murphy, 806 F. Supp. at 324 (finding that a law school student had not established a domicile in Nebraska, the state where his school was located, in part because he "never registered his car in Nebraska[] [and] never registered to vote in Nebraska"); see also Park v. Tsiavos, 679 F. App'x 120, 125–26 (3d Cir. 2017) (district court did not err "in concluding that [a New York college student] failed to overcome the presumption in favor of his existing domicile" in his home state of New Jersey where he "ha[d] not obtained a driver's license, registered to vote, or paid taxes in New York" and "he renewed his New Jersey driver's license . . . the same month [his] action was filed").

In sum, defendant TriNet's evidence of the plaintiff's post-graduate intent to remain in the District ultimately boils down to the plaintiff establishing a business in the District, obtaining employment with defendant Trustify in the District for a brief period of time, and obtaining a District of Columbia driver's license in 2014. For the reasons already explained, and particularly in light of the plaintiff's significant ties to California, the Court concludes that defendant

TriNet's evidence is insufficient to rebut the presumption that the plaintiff intends to return to his home state of California upon completion of his studies. Consequently, because defendant TriNet has not shown that the plaintiff has at any time intended to remain in the District indefinitely or for an unspecified period of time, defendant TriNet has failed to satisfy its burden of showing that the plaintiff was ever domiciled in the District, see Prakash, 727 F.2d at 1180, and therefore, it has failed to demonstrate that complete diversity of citizenship exists among the parties in this case.

## B.  **Fraudulent Joinder Analysis**

The defendants argue for the first time in their reply in support of defendant TriNet's Notice of Removal that even "[a]ssuming . . . that [the p]laintiff was a California resident at the time the lawsuit was filed and removed, removal is still appropriate because [defendant] TriNet was fraudulently joined and so is not a proper defendant."  Defs.' Reply at 3.  Judges in this District have repeatedly held that arguments may not be raised for the first time in a party's reply.  See, e.g., Akinsinde v. Not-For-Profit Hosp. Corp., 216 F. Supp. 3d 33, 41 (D.D.C. 2016) ("The court has no obligation to entertain arguments raised for the first time in a reply brief and declines to do so here."); Wright v. Metro. Life Ins. Co., 618 F. Supp. 2d 43, 47 n.5 (D.D.C. 2009) (Walton, J.) ("Courts 'highly disfavor[] parties creating new arguments at the reply stage that were not fully briefed during the litigation.'" (alteration in original) (quoting Pub. Citizen Health Research Grp. v. Nat'l Insts. of Health, 209 F. Supp. 2d 37, 43 (D.D.C. 2002))). However, even if this argument had been properly raised earlier, it fails.

"The fraudulent joinder doctrine allows the Court to 'disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case,

16

dismiss the nondiverse defendants, and thereby retain jurisdiction.'" Walter E. Campbell Co. v. Hartford Fin. Servs. Grp., Inc., 959 F. Supp. 2d 166, 170 (D.D.C. 2013) (quoting Mayes v. Rapport, 198 F.3d 457, 461 (4th Cir. 1999)).  To demonstrate fraudulent joinder, the removing party must prove that either "(1) there is no possibility the plaintiff can establish a cause of action against the [ ] defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the . . . defendant into state court.'" Id. (alteration in original) (quoting In re Tobacco/Governmental Health Care Costs, Litig., 100 F. Supp. 2d 31, 39 (D.D.C. 2000)).  A removing party's burden to demonstrate fraudulent joinder is a "heavy one," In re Tobacco/Governmental Health Care Costs Litig., 100 F. Supp. 2d at 39 (quoting Pacheco de Perez v. AT&T, 139 F.3d 1368, 1380 (11th Cir.1998)), and the court must "constru[e] all facts and uncertainties in the state substantive law in favor of the plaintiffs," Walter E. Campbell Co., 959 F. Supp. 2d at 170.

Here, defendant TriNet does not argue that the plaintiff fraudulently pleaded jurisdictional facts, but argues that the "[p]laintiff has not, and cannot, state a viable claim against [defendant] TriNet under the DCHRA." Defs.' Reply at 4.  When assessing an argument of this nature, "[t]he [C]ourt's limited role in determining whether a defendant has been fraudulently joined prohibits it from 'delv[ing] into the legal and factual thicket of a merits analysis,' and requires it to 'instead confine its inquiry to whether, on the basis of the claims pled, the plaintiff has shown even a slight possibility of relief.'" Simon v. Hofgard, 172 F. Supp. 3d 308, 316 (D.D.C. 2016) (quoting Boyd v. Kilpatrick Townsend & Stockton, LLP, 79 F. Supp. 3d 153, 157 (D.D.C. 2015)).  "If the Court concludes, after construing all of the facts in a plaintiff's favor, that there is even a possibility that a state court would find a cause of action

stated against [the defendant] on the facts alleged by the plaintiff, diversity is incomplete and the case must be remanded." Boyd, 79 F. Supp. 3d at 157 (internal quotation marks omitted). "A plaintiff has a possibility of establishing a cause of action or right to relief against a defendant so long as the plaintiff's claim is not 'wholly nonsensical.'" Hofgard, 172 F. Supp. 3d at 315 (quoting Boyd, 79 F. Supp. 3d at 157–58).

The defendants argue that the plaintiff cannot state a claim against defendant TriNet under the DCHRA because, "as explained in [defendant] TriNet's Motion to Dismiss and its Reply . . . , [defendant] TriNet was never the [p]laintiff's employer in any respect for purposes of these claims." Defs.' Reply at 4. They provide no further discussion of this argument in their reply, but in defendant TriNet's motion to dismiss, it argues that the plaintiff has failed to specifically allege facts sufficient to show that defendant TriNet is a "joint employer" with defendant Trustify, in part, because the plaintiff "does not allege a single interaction or other form of engagement with [defendant] TriNet that in any way relates to his claims of discrimination and retaliation, or otherwise as to any significant event of his employment (such as being hired, fired[,] or promoted) or the day-to-day management of his job." TriNet's Mem. at 4.[8] The plaintiff, although he did not have an opportunity to respond to the defendants' fraudulent joinder argument,[9] asserted in his opposition to defendant TriNet's motion to dismiss that he has alleged facts sufficient to show that defendant TriNet is his joint employer, including defendant TriNet having "issued his biweekly pay checks, provided [his] medical insurance, kept

_____

[8] Because defendant TriNet did not insert page numbers on its memorandum, the page numbers cited by the Court when referencing defendant TriNet's memorandum are the automatically-generated page numbers assigned by the Court's ECF system.

[9] The Court notes that the plaintiff did not seek to file a sur-reply.

[his] employee records[,] [been] listed as his employer on his W-2 form," Pl.'s Opp'n at 5 (citing 2d Am. Compl. ¶¶ 12, 14–17, 20), and "set terms and conditions of [his] employment with the TriNet employee handbook," id. (citing 2d Am. Compl. ¶ 22).

The DCHRA makes it unlawful for an employer to discriminate against an individual "wholly or partially for a discriminatory reason based upon [an] actual or perceived . . . disability." D.C. Code § 2-1402.11(a), (a)(1). This Court has recognized that for purposes of DCHRA liability, an individual may be employed by joint employers, and to determine whether a joint employer relationship exists, "the Browning-Ferris and Spirides tests are the appropriate tests under which to analyze" that question. Miles v. Univ. of the Dist. of Columbia, No. 12-cv-378, 2013 WL 5817657, at *8 (D.D.C. Oct. 30, 2013) (Walton, J.) ("Miles I").[10] Although this "Circuit has never explicitly rejected one test over the other," this Court and others have observed that "the Circuit is more inclined to adopt the Browning-Ferris test when the issue of joint employment arises in the context of the alleged statutory violations here," i.e., employment discrimination claims under the DCHRA and other similar statutes. Miles v. Howard Univ., 83 F. Supp. 3d 105, 113 n.9 (D.D.C. 2015) (Walton, J.) ("Miles II") (collecting cases). For this reason, and because the Court need only decide whether there is "a slight possibility of relief,"

---

[10] The Court was unable to locate any decisions of the Superior Court or District of Columbia Court of Appeals that address the issue of joint employment under the DCHRA. However, in addition to this Court, other "members of this Court have [ ] applied the Browning-Ferris and Spirides tests to determine whether a joint employment relationship exists for purposes of Title VII," Miles I, 2013 WL 5817657, at *8, and the District of Columbia Court of Appeals has a "practice of looking to federal Title VII cases in interpreting the DCHRA," Lively v. Flexible Packaging Ass'n, 830 A.2d 874, 890 (D.C. 2003). Therefore, considering the fact that an analysis of fraudulent joinder only requires the Court to determine whether there is "a slight possibility of relief," Hofgard, 172 F. Supp. 3d at 316 (internal quotation marks omitted), the Court finds it appropriate to assume that a Superior Court judge or the District of Columbia Court of Appeals might apply the Browning-Ferris test or some version of it to assess the plaintiff's claims.

Hofgard, 172 F. Supp. 3d at 316 (internal quotation marks omitted), the Court will apply the Browning-Ferris test here.

Under the Browning–Ferris test, the Court must determine whether defendant TriNet "'retained for itself sufficient control of the terms and conditions of the [plaintiff's] employment [even though he was] employed by [Trustify],'" Redd v. Summers, 232 F.3d 933, 938 (D.C. Cir. 2000) (citation omitted), which "is essentially a factual issue," Nat'l Labor Relations Bd. v. Browning-Ferris Indus. of Pa., Inc., 691 F.2d 1117, 1123 (3d Cir. 1982) (quoting Boire v. Greyhound Corp., 376 U.S. 473, 481 (1964)). "Factors for the Court to consider under the Browning–Ferris test include: '[(1)] the alleged employer's authority to hire and fire the relevant employees; [(2)] the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; [(3)] the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and [(4)] the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.'" Miles II, 83 F. Supp. 3d at 117 (alterations in original) (quoting In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig., 683 F.3d 462, 469 (3d Cir. 2012)).

Based on the facts alleged by the plaintiff, a court could find that several of the Browning-Ferris factors support the plaintiff's position that defendant TriNet is subject to joint employer liability. As to the first factor, which concerns "the authority to hire and fire," Miles II, 83 F. Supp. 3d at 117, although the plaintiff does not allege that defendant TriNet hired him or had the authority to hire him, he does allege that "TriNet approved the decision of . . . [defendant] Trustify to terminate [him]," 2d Am. Compl. ¶ 29; see also id. ¶ 39 ("TriNet . . .

permitted the materially adverse action taken against [the plaintiff] . . . .").  Therefore, defendant

TriNet is incorrect that "there is no allegation . . . that TriNet [ ] had authority to hire or fire."

TriNet's Mem. at 5.  And although defendant TriNet asserts that it "in fact" had no authority to

hire or fire Trustify employees, see id., it does not direct the Court to any evidence to support

that assertion.  In any event, to the extent that there is a factual dispute on this point, the Court

must resolve that dispute in the plaintiff's favor for purposes of assessing the defendants'

fraudulent joinder claim.  See Walter E. Campbell Co., 959 F. Supp. 2d at 170.

As to the second Browning-Ferris factor, which includes the "authority to . . . set the [ ]

conditions of employment," Miles II, 83 F. Supp. 3d at 117, the plaintiff has alleged facts that

suggest that defendant TriNet had some authority to set certain conditions of employment for

Trustify employees, including compensation, benefits, and rate and method of payment.  See

Miles II, 83 F. Supp. 3d at 117.  Specifically, the plaintiff has alleged that "TriNet provided

[him] with an employee handbook," 2d Am. Compl. ¶ 14; "TriNet issued [his] biweekly pay

checks," id. ¶ 15; "Tri-Net is listed as [his] employer on his W-2 form," id. ¶ 16; and "TriNet

provided [his] medical insurance during the course of his employment with [the d]efendants," id.

¶ 17.  And as to the fourth Browning-Ferris factor, which concerns "actual control of employee

records," Miles II, 83 F. Supp. 3d at 117, the plaintiff has alleged that defendant TriNet

"maintain[ed] employee records for its 'worksite' employees like [the plaintiff]."  2d Am. Comp.

¶ 19.  Notably, defendant TriNet does not dispute these allegations, see TriNet's Mem. at 5

(acknowledging that it "provided administrative services to . . . [Trustify's] employees, including

issuing [the p]laintiff's pay checks and W-2 and administering benefits like health insurance"),

and these allegations are further supported by the TriNet Employee Handbook, which states that

"customer companies [who partner with TriNet] elect to share several important employer responsibilities with TriNet[,]. . . [including that] TriNet has responsibility for paying wages, sponsoring and administering benefits, processing and maintaining certain employee records, and performing other related HR functions," 2d Am. Compl., Ex. 1 (TriNet Employee Handbook) at 7.

As to the third Browning-Ferris factor, although defendant TriNet is correct that the plaintiff did not allege that defendant TriNet "had day-to-day supervision of [the] plaintiff's . . . discipline or control of his schedule," TriNet's Mem. at 5, and that the TriNet Employee Handbook states that a TriNet partner company such as defendant Trustify, is the "employer for day-to-day job responsibilities and requirements," 2d Am. Compl., Ex. 1 (TriNet Employee Handbook) at 7; see also TriNet's Mem. at 4, the Court does not find this omission fatal to the plaintiff's claim for purposes of assessing fraudulent joinder. As explained above, the plaintiff has alleged facts that could support three of the four Browning-Ferris factors weighing in the plaintiff's favor. And defendant TriNet has cited no legal authority which establishes that the third factor, related to day-to-day supervision, is dispositive of the joint employment question. In fact, at least one member of this Court has concluded the opposite, see Coles v. Harvey, 471 F. Supp. 2d 46, 51 (D.D.C. 2007) (in applying Browning-Ferris test, concluding that "supervision and evaluation [of employee performance] are [not] determinative of the joint employment question"), and this Court agrees with that assessment.

The Court is not persuaded that any of defendant TriNet's counterarguments raised in its motion to dismiss "completely preclude" the plaintiff's claims or render them "wholly nonsensical." Hofgard, 172 F. Supp. 3d at 315, 318. Defendant TriNet argues that the plaintiff's

claims must fail because "he does not allege a single interaction or other form of engagement with [defendant] TriNet that in any way relates to his claims of discrimination and retaliation, or otherwise as to any significant event of his employment . . . or the day-to-day management of his job." TriNet's Mem. at 4. However, it cites no legal authority, nor is the Court able to locate any, for the proposition that an employee must directly interact with his joint employer in order to establish joint employer liability. The Browning-Ferris test is concerned with "control of the terms and conditions of [the plaintiff's] employment," Redd, 232 F.3d at 938, and although an employee's direct interactions with a joint employer could be probative of the joint employer's control over that employee, it does not necessarily follow that such interactions are required to establish control.

Defendant TriNet also argues that the "administrative services" it provided to the plaintiff and to defendant Trustify "cannot serve as a basis for [the p]laintiff's claims against [defendant] TriNet" because the plaintiff fails to allege that defendant TriNet had the "authority to hire or fire, promulgate work rules, or set conditions[,] [ ] day-to-day supervision of [the] plaintiff's employment including discipline or control of his schedule[,] or [ ] control of his pay," TriNet's Mem. at 5, and without those "hallmarks of joint or co-employment . . . , a defendant is not a joint employer for purposes of statutory claims like those raised here." Id. As already explained, the plaintiff has alleged facts that support his argument that some of these "hallmarks" existed. Furthermore, none of the decisions defendant TriNet cites compel the conclusion that each of these "hallmarks" must be present for joint employer liability to exist. Importantly, none of these decisions is controlling authority, nor do any explicitly apply the Browning-Ferris

factors.[11]  Although two of these decisions underscore the importance of whether a joint employer has a right to terminate an employee, see Sandoval v. City of Boulder, Colo., 388 F.3d 1312, 1324 (10th Cir. 2004) ("Most important to control over the terms and conditions of an employment relationship is the right to terminate it under certain circumstances." (internal quotations omitted)), as well as the right to hire and supervise employees, see EEOC v. Pac. Maritime Ass'n, 351 F.3d 1270, 1277 (9th Cir. 2003) ("Numerous courts have considered the key to joint employment to be the right to hire, supervise[,] and fire employees."), neither forecloses the possibility that an entity could be deemed a joint employer absent one or more of these attributes.  Moreover, these cases were decided on summary judgment or motions for judgment as a matter of law, see Sandoval, 388 F.3d at 1324 (summary judgment); Pac. Maritime Ass'n, 351 F.3d at 1277 (motion for judgment as a matter of law), and therefore, they have limited value in determining whether the plaintiff can state a claim for purposes of fraudulent joinder, which is a "burden [ ] much lighter than" a plaintiff's burden on summary judgment or a judgment as a matter of law, Crowe v. Coleman, 113 F.3d 1536, 1542 (11th Cir. 1997) ("[T]here need only be 'a reasonable basis for predicting that the state law might impose liability on the facts involved.'" (quoting B, Inc. v. Miller Brewing Co., 663 F.2d 545, 550 (5th Cir. 1981)).

Defendant TriNet also cites two decisions from other district courts that have concluded that professional employer organizations like defendant TriNet are not joint employers.  See Adams v. Valega's Prof. Home Cleaning, Inc., No. 12-cv-644, 2012 WL 5386028, at *14–15

---

[11] One case quoted Browning-Ferris in its recitation of the legal standard for joint employment, but did not recite or purport to apply the four Browning-Ferris factors.  See EEOC v. Pac. Maritime Ass'n, 351 F.3d 1270, 1276–77 (9th Cir. 2003).

(N.D. Ohio Nov. 2, 2012); <u>Coldwell v. RiteCorp Env. Prop. Solutions</u>, No. 16-cv-1998, 2017 WL 1737715, at *10 (D. Colo. May 4, 2017). Again, these decisions are not controlling authority, but even if they were, they do not foreclose the plaintiff's claims. Indeed, <u>Coldwell</u> explicitly recognizes that it "in no way concludes that a [professional employer organization] . . . would never qualify as an employer." <u>Coldwell</u>, 2017 WL 1737715, at *10. And again, these cases have limited relevance to the fraudulent joinder analysis because they were applying the more rigorous summary judgment standard. See <u>Adams</u>, 2012 WL 5386028, at *2, 4; <u>Coldwell</u>, 2017 WL 1737715, at *1–2, 10.[12]

Finally, to the extent that the Court would require the plaintiff to show that defendant TriNet "knew or should have known of the [alleged unlawful] conduct and that it failed to take [ ] corrective measures within its control," <u>Caldwell v. ServiceMaster Corp.</u>, 966 F. Supp. 33, 46 (D.D.C. 1997)—a showing that at least one member of this Court has required a plaintiff to demonstrate in order to prevail on a theory of joint employer liability against a temporary agency, <u>see</u> <u>id.</u>—the Court finds that the plaintiff has alleged facts sufficient to demonstrate the possibility that the plaintiff has satisfied this requirement. The plaintiff alleges that defendant TriNet not only knew of the alleged discriminatory and retaliatory conduct, <u>see</u> 2d Am. Compl. ¶ 54, but that it "permitted," "approved," and, in one instance, "joined in" it, <u>see</u> <u>id.</u> ¶ 39 ("TriNet . . . permitted the materially adverse action[s] taken against [the plaintiff] when [defendant] Trustify refused to provide . . . the requested reasonable accommodation . . . and when Trustify terminated [the plaintiff's] employment."); <u>id.</u> ¶ 29 ("TriNet approved the

---

[12] <u>Adams</u> is also distinguishable because it applied a federal regulation that specifically addresses whether professional employer organizations qualify as joint employers under the Family Medical Leave Act, <u>see</u> <u>Adams</u>, 2012 WL 5386028, at *11–13, which is not applicable here.

decision . . . to terminate [the plaintiff]."); id. ¶ 40 ("TriNet [ ] joined Trustify in opposing [the plaintiff] obtaining unemployment benefits.").  Furthermore, the plaintiff has alleged facts suggesting that defendant TriNet possessed authority with respect to requests for reasonable accommodations, see id. ¶ 22 (quoting instruction from TriNet Employee Handbook that "[a]ll [Trustify] managers should immediately report . . . matters [regarding concerns about accommodation requests] to a TriNet HR Representative"), as well as employee termination, see id. ¶ 29 ("TriNet approved the decision . . . to terminate [the plaintiff]."), which suggests that "corrective measures [were] within its control," Caldwell, 966 F. Supp. at 46.

Defendant TriNet argues that the plaintiff has not satisfied Caldwell's standard because the plaintiff "does not allege . . . that he [contacted defendant TriNet about an accommodation] (and in fact he did not)," and in any event, "[defendant] TriNet [does not] control[] such decisions . . . [because] it does not dictate the essential functions of the jobs designed by and performed for [defendant Trustify] or determine what may be a hardship . . . to accommodate." TriNet's Reply at 2–3.  First, the Court cannot agree that the absence of an allegation that the plaintiff directly contacted defendant TriNet regarding his accommodation requests forecloses the plaintiff's ability to show that defendant TriNet knew about the requests.  As already explained, the plaintiff has alleged that defendant TriNet not only knew of his accommodations requests, but also "permitted" defendant Trustify to refuse to satisfy those requests.  See 2d Am. Compl. ¶ 39.  Furthermore, the allegation that defendant TriNet knew about the requests is made plausible by the instruction in the TriNet Employee Handbook that "[a]ll [Trustify] managers should immediately report . . . matters [regarding concerns about accommodation requests] to a

TriNet HR Representative." Id. ¶ 22.[13]  Second, the issue of whether defendant TriNet had control over decisions related to the plaintiff's accommodation requests and other terms of employment is a factual one that must be resolved in the plaintiff's favor for purposes of assessing a fraudulent joinder claim.  See Walter E. Campbell Co., 959 F. Supp. 2d at 170.

In sum, it could be that the plaintiff's claims against defendant TriNet may not ultimately be successful; however, the Court simply cannot conclude that the plaintiff's claims against defendant TriNet are "wholly nonsensical," Hofgard, 172 F. Supp. 3d at 315, or "completely preclude[d]," id. at 318.   As the plaintiff points out, see Pl.'s Opp'n at 4, the joint employer inquiry is heavily dependent on the facts of a particular case, and therefore, it is ill-suited to resolve prior to summary judgment, see Brown v. Corr. Corp. of Am., 603 F. Supp. 2d 73, 79 (D.D.C. 2009) (concluding that "[d]etermining whether [two defendants] were [the] plaintiff's joint employers . . . is [ ] a factual issue . . [that] is plainly inappropriate to resolve on a motion to dismiss" for failure to state a claim (internal citation and quotation marks omitted)); see also Browning-Ferris, 691 F.2d at 1123 (explaining that the issue of whether an employer has "sufficient indicia of control . . . is essentially a factual issue" (internal quotation marks omitted)).   Ultimately, any further inquiry by this Court into the joint employment question presented here "would [ ] force[] [it] to enter into the legal and factual thicket that comprises the

---

[13] Defendant TriNet also argues that "[w]hile the [TriNet Employee H]andbook . . . notes that . . . onsite managers 'should' inform TriNet of accommodation requests, it does not say they 'must.'"  TriNet's Reply at 2.  It further argues that Caldwell's "should have known" standard cannot be met here because defendant "TriNet had no way to know of any accommodation request or failure to accommodate unless [the p]laintiff told it (which he did not) or Trustify informed it[,] . . . Trustify was under no [ ] obligation . . . to inform TriNet, and . . . TriNet was not under any obligation of reasonable diligence to inquire . . . unless made aware."  Id. at 2–3 n.1.  Curiously, defendant TriNet does not explicitly claim that it did not know about the plaintiff's accommodation requests.  In any event, such factual disputes regarding whether TriNet knew or should have known about the alleged conduct must be resolved in the plaintiff's favor for purposes of assessing a fraudulent joinder claim.  See Walter E. Campbell Co., 959 F. Supp. 2d at 170.

merits of this case[, and t]his is not terrain upon which a court uncertain of its jurisdiction should tread." Brown v. Brown & Williamson Tobacco Corp., 26 F. Supp. 2d 74, 77 (D.D.C. 1998) (internal quotation marks omitted) (second alteration in original).

### III.  CONCLUSION

For the foregoing reasons, the Court concludes that defendant TriNet has failed to satisfy its burden to demonstrate that diversity jurisdiction exists in this case.  Furthermore, defendant TriNet has also failed to demonstrate that it was fraudulently joined.  Consequently, the Court concludes that it must remand this case to the Superior Court of the District of Columbia.[14]

**SO ORDERED** this 20th day of March, 2018.

REGGIE B. WALTON
United States District Judge

---

[14] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.